**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Thermaduct, LLC.,

Plaintiff and Counter-Defendant,

v.

Albers Mechanical Contractors, Inc. d/b/a Ducts and Cleats; and Albers Sheetmetal and Ventilating, Inc., d/b/a Ducts and Cleats,

Defendants and Counterclaimants.

Case No. 26-cv-0963 (LMP/SGE)

**ORDER**

---

This matter is before the Court following a pretrial conference on August 18, 2026, where the parties discussed a Partially Contingent Stipulation for a Protective Order. (Dkt. 57.) The only issue in dispute is Plaintiff's proposal to designate certain discovery materials as being subject to a "patent prosecution bar." (*Id.*) After the conference, the Court entered a Protective Order and ordered briefing on the patent prosecution bar issue. (Dkt. 60.) The matter is now fully briefed and has been taken into consideration by the Court. (Dkts. 61 and 62.) For the reasons set forth below, Plaintiff's proposal for a patent prosecution bar is **DENIED**.

## STANDARD OF REVIEW

A court has broad discretion in granting a protective order and may do so based on a showing of good cause. Fed. R. Civ. P. 26(c)(1)(G). A party seeking a protective order bears the burden to show there is good cause to issue an order that protects the party from

"annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Id.*; *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 734 (D. Minn. 2008).

**ANALYSIS**

Patent litigation poses unique issues when it comes to protective orders. Although designating certain information as "confidential" or "attorneys' eyes only" may protect sensitive information, such designation may not be sufficient in patent cases. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Patent litigation counsel sometimes "wear two hats," having access to an adversary's sensitive information (including unreleased products) under a protective order while also obtaining patents on behalf its litigation client. *Id.* at 1377; *Carlson Pet Prods., Inc. v. N. States Indus., Inc.*, No. 017-CV-02529-PJS-KMM, 2019 WL 2991220, at *2 (D. Minn. July 9, 2019). Despite "most rigorous efforts[,]" a party's patent litigation counsel could inadvertently use information regarding a competitor's unreleased products learned during discovery when obtaining patents for their client that would ultimately prevent the release of the competitor's planned products. *Deutsche Bank*, 605 F.3d at 1378. A "patent prosecution bar" designation may thus be appropriate in patent infringement suits because of the human mind's difficulty in compartmentalizing between sensitive information learned as litigation counsel and competitive decision-making that litigation counsel would be required to undertake if also serving as patent prosecution counsel. *Id.*

The Court may grant a patent prosecution bar designation on a showing that: (1) the litigation counsel for a party is engaged in competitive decision-making; (2) the exchange of information presents a risk of inadvertent use by competitive decision-makers; (3) the duration of the bar, the scope of activities it prevents, and the subject matter covered by it are reasonably tailored to the risk of inadvertent use; and (4) denying a party the counsel of its choice because of a patent prosecution bar designation does not outweigh the risk of inadvertent use. *Carlson*, 2019 WL 2991220, at *5. The first two factors are threshold questions, and the Court need not reach the remaining factors if the first two factors do not favor a patent prosecution bar designation. *See id.*

## I. Competitive Decision-Making

The first threshold question for this Court is whether Defendants' litigation counsel are competitive decisionmakers. Patent litigation counsel are competitive decisionmakers if litigation counsel are "substantially engaged with [patent] prosecution." *Deutsche Bank*, 605 F.3d at 1380. Substantial engagement includes activities such as: "obtaining disclosure materials for new inventions[,] . . . making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving[,] . . . or strategically amending or surrendering claim scope during patent prosecution." *Id.*

Plaintiff has made a satisfactory showing that Defendants' litigation counsel are generally experienced in patent prosecution. (*See* Dkt. 62., at 2–3.) But Plaintiff has failed to establish that Defendants' litigation counsel are competitive decisionmakers. Defendants' litigation counsel do not advise Defendants on new inventions or

inventions under development. They do not make strategic decisions on patent protection that might be available for such inventions. They do not counsel their clients to seek such patent protection. Nor do they write, review, or approve patent applications to cover those inventions. Defendants have opted to use another firm for that purpose. (*Id.*; Dkt. 61, at 5.) As a result, Defendants' litigation counsel, unlike the *Carlson* counsel, wear a single hat. They represent Defendants in patent litigation, and not patent prosecution matters. *See Carlson*, 2019 WL 2991220, at *2.

Plaintiff argues that Defendants' litigation counsel could engage in patent prosecution in the future on behalf of Defendants. (Dkt. 62, at 3.) But this argument is speculative, and any injury to Plaintiff is too remote to warrant the patent prosecution bar designation. In contrast, the litigation counsel in *Carlson* also provided "strategic counseling on [patent] prosecution matters," were listed as counsel of record on patent reexamination proceedings at the USPTO, and advised their client on "patent prosecution, claim scope, and strategy." *Carlson*, 2019 WL 2991220, at *5.

Plaintiff has thus failed to establish that Defendants' litigation counsel are competitive decisionmakers.

## II. Information Exchange by Competitive Decisionmakers.

The second threshold question is whether the case involves the exchange of information that presents a risk of inadvertent use of commercially or competitively sensitive information by competitive decisionmakers. *Id.* There is no question that information that relates to future or unreleased products, or technical details and market studies thereof, is commercially and competitively sensitive. *Id.* Discovery should

allow parties to share this information to defend allegations of patent infringement without the threat of losing future competitiveness due to the inadvertent disclosure of sensitive competitive information. *Id.*

But the risk of inadvertent use arises only when the information is shared with competitive decisionmakers. As discussed above, Defendants' litigation counsel are separate and distinct from their patent prosecution counsel. (Dkt. 62, at 3.) As such, sensitive discovery materials which Defendants' litigation counsel will have access to in this case will not be accessible to Defendants' patent prosecution counsel. (Dkt. 61, at 3.)

Plaintiff nevertheless asserts that "it remains foreseeable that [Defendants' patent prosecution counsel] will seek to confer with [Defendants' litigation counsel]." (Dkt. 62, at 3.) The Court disagrees. Nothing in the record suggests that Defendants' litigation and patent prosecution counsel have conferred or will do so in the future. Unlike the parties in *Cheah IP LLC v. Plaxo, Inc.*, No. C-08-4872 PJH (EMC), 2009 WL 1190331, at *2-3 (N.D. Cal. May 4, 2009), Defendants do not intend their litigation counsel to freely advise their patent prosecution counsel. Contrary to Plaintiff's assertions, there is no foreseeable risk that Plaintiff's sensitive information will be passed along to Defendants' patent prosecution counsel, either inadvertently or intentionally.

Plaintiff has thus failed to establish that the case involves the exchange and inadvertent use of sensitive information by competitive decisionmakers.

## III. Remaining *Carlson* factors

Given the above discussion, the Court need not consider the remaining Carlson factors. It is nevertheless worthwhile noting that the scope of the activities limited by Plaintiff's proposed patent prosecution bar is overbroad, as it prohibits Defendants' litigation counsel from prosecuting patent applications related to HVAC duct technology for any client, and not just the Defendants. (Dkt. 62, at 3.) ("Merchant & Gould's potential to influence Ducts & Cleats' (and *others'*) patent prosecution activities to advance their competitive position . . . is therefore real.") (emphasis added). In contrast, the litigation counsel in *Carlson* were prohibited from directly prosecuting new patent applications only for their litigation client, and not entities who were not party to the lawsuit.

In addition, denying Defendants their choice of counsel on this basis outweighs the risk of inadvertent disclosure. Granting a patent prosecution bar would put the Defendants' litigation counsel in the difficult position of choosing between representing Defendants and assisting other patent prosecution clients obtain patents for HVAC duct technology. (Dkt. 61, at 6.) This is a far-reaching prohibition and not warranted by the facts of this case.

On these bases, a patent prosecution bar is not appropriate in this case.

# ORDER

**IT IS HEREBY ORDERED THAT** Plaintiff's request for entry of a proposed protective order with a patent prosecution bar designation (Dkt. 57) is **DENIED**.

Dated: September 3, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge